## WESTERN UNION TELEGRAPH COMPANY V. JAMES ELLIOTT.

### No. 354.

1. **Telegraph Companies—Unrepeated Message—Contract—Negligence.—** The provision in the contract for the transmission of a message limiting the liability of a telegraph company for errors in the transmission of unrepeated messages to the amount paid for sending the same, is valid, and no greater amount than the tolls paid for sending the message can be recovered on account of the errors in the transmission, unless it be shown that it was caused by the misconduct, fraud, or want of due care on the part of the company, its agents, or servants; and the question of negligence is one of fact to be submitted to the jury.

2. **Same—Erroneous Charge.—**The charge of the court, to the effect that if the mistake in the transmission of the message was the proximate cause of appellee's being deprived of being with his mother in her dying moments, or being present at her burial, then he was entitled to recover damages for his mental suffering, etc., was error.

3. **Message in Care of Another—Delivery.—**It is well settled that the delivery of the message to the person in whose care same is addressed is a full performance of the contract by the company, so far as delivery is concerned.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE.

*Field & Homan,* for appellant.—1. Under the contract for transmission of the message sued on, defendant is not liable for errors in transmission beyond the amount of charges paid for the transmission, unless it is shown by direct evidence, or by the circumstances of the case, that defendant or its agents have been guilty of fraud, misconduct, or want of due care in the transmission, and the mere fact that an error occurs is not sufficient to render defendant liable for negligence; and this rule is not varied by the fact that the error in the address was the cause of the failure of Lou Elliott to open and forward the message to plaintiff. Tel. Co. v. Neill, 57 Texas, 283; Womack v. Tel. Co., 58 Texas, 176; Tel. Co. v. Edsall, 63 Texas, 668; Tel. Co. v. Hearne, 77 Texas, 83; Redpath v. Tel. Co., 112 Mass., 71.

2. The delivery of the message to Lou Elliott, the wife of plaintiff, to whose care the same was addressed, was in law a delivery to the plaintiff, and the defendant is not liable for the acts or omission of Lou Elliott with respect to the message, after its delivery to her. Tel. Co. v. Young, 77 Texas, 245; Tel. Co. v. Cullers & Henry, 3 Ct. App. C. C., 289, 290; Given v. Tel. Co., 24 Fed. Rep., 119.

3. The evidence showing that the message was delivered within reasonable time to Lou Elliott, the charge of the court, that the provision in the contract limiting the liability of defendant for errors in transmission was not applicable to a failure to deliver, was inapplicable to the case, and misleading. Tel. Co. v. Cooper, 71 Texas, 507; Tel. Co. v. Kendzora, 77 Texas, 257.

*Davis & Astin,* for appellee.—1. The failure to transmit the message as it was tendered and received at Temple was a palpable breach of contract and inexcusable negligence; and where such negligence on the part of defendant company or its servants is found to be proximate cause of plaintiff's injury, damages are recoverable without regard to the degree of negligence or care disregarded by such servants, unless it be shown that no diligence whatever could have availed to prevent the injury. Tel. Co. v. Houghton, 82 Texas, 562; Tel. Co. v. Carter, 85 Texas, 585; Tel. Co. v. Evans, 21 S. W. Rep., 266; Tel. Co. v. Karr, 24 S. W. Rep., 302.

2. No care or diligence whatever is shown in the transmission of the message; for the message as received, addressed to James Elliott and engaged to be sent to him, never was sent to him, but was changed both in body and address and sent to another and different party, namely, J. W. Cott; wherefore the rule as to repeating messages does not apply. Tel. Co. v. Edsall, 63 Texas, 668; Tel. Co. v. Edsall, 74 Texas, 329; Railway v. Wilson, 69 Texas, 739; Tel. Co. v. Linn, 23 S. W. Rep., 897.

3. Although a charge may not be technically correct in some respects, yet if the verdict is authorized by the facts, and the justice of the case has been attained, a judgment will not be reversed on account of erroneous charge. Bowles v. Brice et al., 66 Texas, 724; Erwin v. Bowman, 51 Texas, 518; Railway v. Delahunty, 53 Texas, 212; Gaston & Thomas v. Dashiell, 55 Texas, 520; Dotson v. Moss, 58 Texas, 155; Fisk v. Holden, 17 Texas, 414; James v. Thompson, 14 Texas, 465.

FINLEY, ASSOCIATE JUSTICE.—*Statement.*—Early in the morning of April 29, 1891, the sister of appellee delivered to appellant's agent at Temple, and paid for the transmitting thereof, the following telegraphic message to appellee:

"TEMPLE, TEXAS, April 29, 1891.

"*To James Elliott, care Lou Elliott, 313 Hawkins street, Dallas, Texas:*

"Your mother dying. Come at once. Your sister,

"LAURA BROWN."

On the evening of the same day, between 3 and 4 o'clock, there was delivered to Lou Elliott, wife of appellee, at their residence in Dallas,

313 Hawkins street, by appellant, a sealed message, addressed to " James W. Cott, care Lou Elliott." Lou Elliott did not know who the message was intended for, made inquiries, and could not find out, and late in the evening, appellee being absent from home, she opened the envelope. She found the address in the message to be the same as that upon the envelope, while the message read in other respects the same as that above quoted. She knew that appellee's mother and sister were at Temple, and she apprehended that the message was intended for him. She caused the message to be carried to her husband, he receiving it about 8 o'clock in the evening. When he received and read the message, he thought it probable that it was intended for him, though he did not feel certain of it. He went immediately to the telegraph office, made inquiry, and delivered to appellant a message to be sent to his sister, asking if *his* mother was dying. There was no train going out of Dallas which appellee could take for Temple after the telegram was delivered to him, until 6 or 7 o'clock next morning—the evening trains left before 8 o'clock, between the hours of 6 and 8. Appellee failed to get a reply from his message to his sister that night, and he took the train on the Houston & Texas Central Railway between 6 and 7 o'clock next morning. At Ennis he received a reply from his sister, to the effect that his mother had died that morning, April 30th, at 5 o'clock. He went to the telegraph office to send a further telegram to his sister, and while there the train pulled out and left him. He got to Temple the next day about 2 o'clock p. m.—his mother having been buried between 10 and 11 o'clock of that day (a. m.) Had he not been left at Ennis, he could have reached Temple sometime during the previous day, but not until after his mother's death. Had he taken the evening train out of Dallas on the 29th, he could have reached Temple several hours before his mother's death. These trains, however, as before stated, left Dallas before appellee received and read the message —their leaving times being between the hours of 6 and 8 o'clock p. m. Had he received the message promptly, he could not have left sooner than by one of these evening trains.

The message sued on was written on a blank form of the Western Union Telegraph Company, which contained on its face, in heavy faced type, just preceding the address, the following: "Send the following message, subject to the terms on back hereof, which are hereby agreed to." Across the bottom of the message in large letters, with index hand pointing thereto, are the words: "Read the notice and agreement on the back." On the back of the message, in large letters, is the following: "All messages taken by this company are subject to the following terms." Following this is this provision in ordinary long primer type: "To guard against mistakes or delays, the sender of a message should order it *repeated;* that is, telegraphed back to the originating office for comparison. For this, one-half the regular rate is charged in addition.

It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery of any *unrepeated* message, beyond the amount received for sending the same."

The message as delivered to Lou Elliott for plaintiff contained the same printed conditions. The message sent to appellee by his sister on April 29th was an unrepeated message. This suit was brought by James Elliott, as plaintiff, against the telegraph company, defendant, for damages.

Plaintiff alleged, that the message was delivered to him too late on the day of its date to enable him to get a train to Temple, and that he was thereby prevented from seeing his mother before her death and from attending her burial, and that the message "by chance" reached him on the day of its date, but was addressed, "James W. Cott, care Lou Elliott."

Defendant answered by general and special exceptions, which were overruled by the court, by a general denial, and further, that the message was an unrepeated one, and was accepted for transmission and sent under a special contract that defendant should not be liable for errors or mistakes in the transmission of the same beyond the amount paid for its transmission. The case was tried by a jury, March 5, 1892, and resulted in a verdict for plaintiff for $250. Defendant's motion for new trial having been overruled, it appeals.

*Opinion.*—The charge of the court, and, in the same connection, its refusal of special charges asked, are complained of by assignments of error. Defendant's sixth instruction, refused by the court, was as follows:

"The message sued on, from Laura Brown to James Elliott, is an unrepeated message, and defendant company is not liable for any mistake occurring in the transmission of the same beyond the sum paid for transmitting it, unless such mistake was caused by the misconduct, fraud, or want of due care of defendant's agents or servants; and you are instructed, that the fact that a word in a message as delivered is different from the word as originally written, is not of itself sufficient evidence to charge the defendant company with negligence."

The court instructed the jury, that if the contents of the message delivered to plaintiff's wife were unknown to her, and remained unknown to her or plaintiff by reason of the fact that plaintiff's name was changed in transmission, and if the failure to deliver in reasonable time, or the change in the name in transmission was the real, immediate, and proximate cause of plaintiff's being deprived of being with his mother in her dying moment and being present at her burial, plaintiff would be entitled to a verdict.

And the court further instructed the jury: "The provision in the contract for transmission, limiting the liability of defendant for mistakes to the charges paid out for the telegram, except in cases of unrepeated messages, is not applicable to a failure to deliver, and if the failure to deliver to plaintiff through Lou Elliott, in whose care the telegram was sent, resulted from or was brought about by a change in plaintiff's name, defendant would be liable."

The provision in the contract for the transmission of the message limiting the liability of the company for errors in the transmission of unrepeated messages to the amount paid for sending the same, has been passed upon repeatedly by our Supreme Court, and we must consider it settled, that the provision is valid; and no greater amount than the tolls paid for sending the message can be recovered on account of errors in its transmission, unless it be shown that it was caused by the misconduct, fraud, or want of due care on the part of the company, its servants, or agents. The effect of the charge of the court is, that if the mistake in the transmission of the message was the proximate cause of the plaintiff's being deprived of being with his mother in her dying moments, or being present at her burial, then he was entitled to recover damages for his mental suffering, etc. This was error. Tel. Co. v. Neil, 57 Texas, 283; Womack v. Tel. Co., 58 Texas, 176; Tel. Co. v. Edsall, 63 Texas, 668; Tel. Co. v. Hearne, 77 Texas, 83.

It is equally well settled, that a delivery of the message to the person in whose care the same is addressed is a full performance of the contract by the company, so far as delivery is concerned. Tel. Co. v. Young, 77 Texas, 245.

The evidence does not show any delay in the delivery to Lou Elliott, the person in whose care the message was addressed, which could have affected appellee's ability to reach his mother before her death, or before her funeral. Had the message been properly addressed and promptly delivered, appellee could not have left Dallas before 6 o'clock p. m. of the 29th; the delivery to Lou Elliott gave ample time for passage on this 6 o'clock train; but the delay, it seems, was caused by the mistake in the transmission of the address, and the liability of the company for this error was covered by the limitation in the contract previously referred to. Redpath v. Tel. Co., 112 Mass., 71. Therefore, we think the court erred in that part of the charge last above quoted. The sixth special charge asked correctly stated the law of the case, except that portion which undertook to state what would not be sufficient evidence of the company's negligence. This would have been a charge upon the weight of the evidence. The question of negligence should have been submitted as a fact to be determined by the jury under appropriate instructions.

There are other questions presented by the brief of appellant, which we do not regard it necessary to discuss. For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered May 9, 1894.