## WESTERN UNION TELEGRAPH CO. v. WINTER. (No. 1571.)*

(Court of Civil Appeals of Texas. Texarkana. March 1, 1916. Rehearing Denied March 16, 1916.)

1. TELEGRAPHS AND TELEPHONES ⊚⇒38(6) — DELAY IN DELIVERY—CONTENTS OF MESSAGE —NOTICE TO COMPANY.

A telegram worded as follows: "Houston, Texas, July 2, 1914. Geo. W. Winter, Bonham, Texas. Gabe died Chicago this morning. Arrangements later. [Signed] Francis"—which was not promptly delivered, charged the telegraph company with notice that Gabe Winter had died in Chicago; that funeral arrangements were yet to be made; that he was the brother of addressee; and that addressee would probably desire to attend the funeral.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. ⊚⇒ 38(6).]

2. TELEGRAPHS AND TELEPHONES ⊚⇒38(6)— DELAY IN DELIVERY—LIABILITY—KNOWLEDGE OF FACTS.

The delay in delivering such message rendered the telegraph company liable for damages resulting from the addressee's failure to attend the funeral, notwithstanding the company's lack of knowledge of the place where the funeral would be held.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. ⊚⇒ 38(6).]

3. TELEGRAPHS AND TELEPHONES ⊚⇒49 — DAMAGES—SUBSEQUENT TELEGRAM.

A telegraph company which failed to deliver promptly a message announcing the death of addressee's brother is not relieved from liability for damages resulting from his failure to attend the funeral by its prompt delivery of a subsequent message for addressee giving the place and time of the funeral to the person in whose care it was sent, by whom it was not communicated to addressee until too late, since, if the person to whom it was delivered could be considered addressee's agent, it could only be for the purpose of delivering the message to him, and her knowledge of its contents could not be imputed to him so as to make his failure to attend the funeral negligence.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. ⊚⇒49.]

4. TELEGRAPHS AND TELEPHONES ⊚⇒37(2)— DELIVERY—CARE OF ANOTHER PERSON.

Where a telegram is addressed to a person in care of another, delivery by the company to the other relieves the company from all liability.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 29, 32; Dec. Dig. ⊚⇒37(2).]

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

Action by George W. Winter against the Western Union Telegraph Company. Judgment for the plaintiff, and defendant appeals. Affirmed.

Appellee's brother, Gabe Winter, resided in Waco, Tex., but on July 2, 1914, died in a sanitarium at Chicago, Ill. On the morning of that day Francis Winter, another brother to appellee, delivered to appellant at Houston, Tex., for transmission to appellee at Bonham, Tex., where he resided, a telegram as follows:

"Houston, Texas, July 2, 1914. Geo. W. Winter, Bonham, Texas. Gabe died Chicago this morning. Arrangements later. [Signed] Francis."

The message was promptly transmitted to Bonham, but it was not delivered to appellee until Sunday morning, July 5th. In the meantime, to wit, at 4 o'clock on the afternoon of Saturday, July 4th, the remains of appellee's brother Gabe, having been removed to Waco, were there interred. This suit was by appellee to recover damages resulting to him, as he alleged, from negligence of appellant in failing to promptly deliver to him the message set out above. The appeal is from a judgment in his favor for the sum of $500.

Hamp P. Abney, of Sherman, and Francis R. Stark and Albert T. Benedict, both of New York City, for appellant. Cunningham & McMahon, of Bonham, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] The language of the message, which was set out in full in the petition, charged appellant with notice of facts as follows:

(1) That Gabe Winter had just died in Chicago.

(2) That arrangements had not been, but would be, made for interring his remains.

(3) That he was appellee's brother.

(4) That in all probability appellee would desire to attend the funeral when it occurred. Tel. Co. v. Carter, 85 Tex. 580, 22 S. W. 961, 34 Am. St. Rep. 826.

[2] Notwithstanding it thus appeared that appellant had notice of such facts, and notwithstanding allegations showing that appellee could and would have ascertained when and where the remains were to be interred, and could and would have attended the funeral at Waco had the telegram been delivered to him promptly, appellant insists that the petition did not state a cause of action against it, because it did not appear therefrom that it had notice of the fact that the burial would be at Waco. Western Union Tel. Co. v. Kuykendall, 99 Tex. 323, 89 S. W. 965, and Western Union Tel. Co. v. Ayers, 41 Tex. Civ. App. 627, 93 S. W. 199, are cited as supporting the contention.

In the Kuykendall Case it appeared from the petition that the plaintiff's wife's brother died at Hollis, O. T., December 18th, and was buried in the family burying ground at Tow

Valley, Tex., December 21st. The plaintiff, with his wife, lived eight or ten miles from Kingsland, near Tow Valley. The message, which was not delivered until 6 o'clock p. m. December 19th, was as follows:

"Hollis, O. T., 11/18/03. Mrs. Myrtle Kuykendall, Kingsland, Texas. Will Arant died this a. m. Will be at Lampasas to-morrow evening the 19th day. [Signed] Walker Arant."

It was not alleged that the defendant had notice of any other facts than those disclosed by the language of the message. The Supreme Court held that the petition did not show liability on the part of the defendant for damages to the plaintiff's wife due to the fact that, because the message was not promptly delivered, she did not have an opportunity to prepare for the interment of her brother's remains or to attend the funeral. The court said:

"One would naturally expect the deceased person would be buried in the vicinity of his residence, where he died. The phrase 'will be at Lampasas to-morrow evening the 19th day' clearly means that the sender, Walker Arant, would be at Lampasas at the time named; but there is nothing in the terms of the message to indicate that he would carry the body of the deceased with him. Neither did the message give notice to the telegraph company that the deceased would be buried in the family burying ground, near the home of the sister, nor of any facts or circumstances which would make it necessary for her to make preparation to receive the body or to enable her to attend the funeral."

The Ayers Case was not different from the Kuykendall Case in any material respect, and was held by the Court of Civil Appeals to be ruled by it.

In both of those cases there was an absence of anything in the message which could be construed as notice to the telegraph company that the funeral might not be at the place where the deceased died. In this case appellant knew from the face of the message delivered to it that arrangements for the funeral had not been, but were to be, made, and we think it might reasonably have contemplated that the arrangements when made would provide for the funeral to be elsewhere than in Chicago. Moreover, we think appellant might and should have contemplated that appellee, on receipt of the message, if promptly delivered to him, could and would, as he testified he could and would, have ascertained what the arrangements, when made, were, in time to have attended the funeral at Waco.

The case is more like Smith v. Tel. Co., 104 Tex. 171, 133 S. W. 1041, 135 S. W. 1147, than it is like those cited by appellant. In that case it appeared that it was understood between plaintiff's wife and one Thatcher that, if her brother, David Terry, who was sick at Belton, should die, he (Thatcher) would advise her of the fact and arrange for the burial in the family burial ground at Houston. The message was as follows:

"Belton, Texas, November 25, 1904. Mrs. J. Mayrant Smith, care Oriental Oil Company, Dallas, Texas. Dave died this morning three

o'clock. Will make all arrangements. [Signed] Wm. Thatcher."

The Court of Civil Appeals held that:

There was "nothing in the telegram that can be held to give notice to the telegraph company that the remains would be carried to Houston for burial, and therefore it cannot be said that the damages resulting to Mrs. Smith in not being notified in time to attend the funeral at Houston were contemplated by the company at the time the contract to transmit and deliver the message was entered into." Postal Tel. Cable Co. of Texas v. Smith, 124 S. W. 733.

And on authority of the Kuykendall Case it reversed the judgment in Smith's favor. The Supreme Court, having granted a writ of error, reached a contrary conclusion, and in distinguishing the case from Tel. Co. v. Kuykendall, supra, said:

"In the present case the place of the burial had been fixed, and all due arrangements in respect thereto provided for, all of which was well understood and known to the addressee of the message. These were not matters as to which she needed information or as to which the message was intended to give information. The important fact intended to be conveyed to her, and which alone, as she avers, was necessary to enable her to attend the funeral of her brother, was the fact of his death. This information was, by the negligence of the company, withheld from her. The nature of the telegram was such as to visit it with notice of the fact that she might, and probably would, wish to attend the burial whenever it might be. Nor can her right to recover be defeated because notice of the place of the funeral was not given in it."

The difference between the Smith Case and this one lies in the fact alone that there, had the message been delivered to the addressee, she would have known, not when, but where, the funeral would occur; while here, had the message been delivered to appellee, he would not have known when nor where the remains of his brother would be interred. But in each of the cases the important fact intended to be conveyed to the addressee by the message was the death of the party named therein. As Mrs. Smith, had the message been promptly delivered to her, could have ascertained when the funeral would occur, so appellee, had the message to him been promptly delivered, could and would, he alleged, have ascertained when and where his brother's remains would be interred, and have been present at the funeral. So far as the language of the message in the Smith Case is concerned, it was not materially different from that in the message to appellee, and it did not advise the defendant in that case of any fact not disclosed to appellant by the message in question here. We think the petition stated a cause of action, and it was not error to overrule the demurrer.

[3] Appellant alleged and proved that on Friday, July 3, 1914, appellee's brother Francis delivered to it at Waco a message to appellee at Honey Grove, as follows:

"Waco, Texas, 7/3/14. Geo. W. Winter, care Miss McNew, Honey Grove, Texas. Join Annie Dallas morning Katy. Gabe interred Saturday 4 o'clock. [Signed] Francis."

184 S.W.—22

And he further alleged and proved that the Miss McNew, to whose care the message was addressed, was appellee's sister-in-law, and that it promptly transmitted and delivered the message to her at Honey Grove. It appeared from the testimony that appellee was not, in fact, advised of the contents of this message until Sunday morning, July 5th; but it further appeared that, had Miss McNew acted diligently, the contents thereof could have been communicated to him in time to have enabled him to be present at his brother's funeral.

Appellant insists that the delivery of this message to Miss McNew was, in legal effect, a delivery thereof to appellee, and that he was chargeable with knowledge of its contents at the time it was delivered to Miss McNew. On this theory appellant urges that it appeared as a matter of law that appellee's failure to act on the information contained in this telegram, and not its negligence in failing to promptly deliver the telegram of July 2d, was the proximate cause of his failure to attend his brother's funeral, and therefore that the court erred when he refused to peremptorily instruct the jury to find in its favor.

[4] It is true that appellant fully discharged the duty it owed to appellee with reference to the telegram of July 3d when it promptly transmitted and delivered same to Miss McNew. Tel. Co. v. Young, 77 Tex. 245, 13 S. W. 985, 19 Am. St. Rep. 751. Had appellee's suit been predicated on that telegram, it must have failed; for it would have appeared that appellant had fully discharged the obligation it incurred when it accepted same for transmission and delivery. But appellee's suit was not predicated on any act or omission on the part of appellant with reference to that telegram, but on its negligence in failing to promptly deliver the telegram of July 2d. It is, of course, true that, had it appeared that the contents of the telegram sent to Miss McNew's care were communicated to appellee in time to have enabled him to attend the funeral, he should not have been heard to complain because of appellant's negligent delay in delivering the other telegram; for it would then have appeared that his own negligence, and not appellant's, was the proximate cause of his absence from the funeral. But it conclusively appeared that the contents of the telegram to Miss McNew's care were not communicated to appellee until Sunday, after the funeral on Saturday. Certainly appellee was not negligent in fact in failing to act on information which had not been communicated to him at the time he must have acted to avoid the injury he suffered; and we do not think it should be held that he was negligent in law on the theory that Miss McNew's knowledge is imputed to him. We know of no principle of law which operated to charge appellee with knowledge of the contents of the telegram possessed by

Miss McNew. If she was his agent, she was not so because of any act of his, and was so for the sole purpose of receiving that telegram when it was tendered to her, and delivering same to him. Knowledge on her part of the contents thereof, in any event, could be imputed to him only so far as it might affect rights asserted by him with respect to that telegram.

The judgment is affirmed.